# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS GIOVANNELLI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-01092 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| WALMART, INC., and | ) | |
| WAL-MART.COM USA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

After Walmart sold posters containing a photo of Nicholas Giovannelli conducting combat patrol in Afghanistan, Giovannelli sued Walmart, bringing a claim under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*, and a claim for negligent infliction of emotional distress. R. 2-1, Compl.[1] After Walmart filed a motion to dismiss, Giovannelli's emotional-distress claim was dismissed. R. 23, MTD Op. at 1–2. Then, Walmart's summary judgment motion on the remaining claim was granted because the claim was time-barred by the Publicity Act's statute of limitations. R. 99, MSJ Op. Walmart has now filed a motion for attorneys' fees under Section 55 of the Publicity Act. *See* R. 113, Def.'s Mot. for Fees. For the reasons explained below, the motion is denied.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and where necessary, a page or paragraph citation.

## I. Background

In 2021, Nicholas Giovannelli brought this action against Walmart under the Illinois Right to Publicity Act. Giovannelli alleges that a U.S. Army photographer took a photo of him while Giovannelli was conducting combat patrol in Afghanistan, *see* R. 85, DSOF ¶ 2; R. 85-1, Giovannelli Dep. 1 at 19–20, and that in 2016, Walmart began selling posters with the photo on them. R. 85-3, Ferrazzano Decl. ¶ 4. In 2020, Giovannelli found out about these posters and he alleges that seeing them retriggered his post-traumatic stress disorder. R. 87-1, Giovannelli Dep. 2 at 17:6–20, 28:16–29:8. Giovannelli alleges that Walmart's actions violated the Publicity Act and inflicted emotional distress on him. R. 54, Am. Compl. at 3–5. The emotional-distress claim was dismissed earlier in the case. MTD Op. at 1–2. Then, Walmart's motion for summary judgment was granted because the Publicity Act claim was time-barred by the Act's statute of limitations. MSJ Op.

Walmart now moves to recover attorneys' fees. *See* Def.'s Mot. for Fees. Walmart relies on the fee-shifting provision in the Publicity Act to support the request for fees, *see id.*; *see also* 765 ILCS 1075/55, and seeks to recover $36,251.50. Giovannelli opposes the motion on the grounds that awarding fees would not promote the purpose of the Publicity Act. R. 115, Pl.'s Resp. Br. at 3–4.

## II. Legal Standard

Under Section 55 of the Publicity Act, the prevailing party in a case brought under the statute may seek attorneys' fees. Specifically, the statute says that the "court *may award* to the prevailing party reasonable attorney's fees, costs, and

expenses relating to an action under this Act." 765 ILCS 1075/55 (emphasis added). "A 'prevailing party' for the purposes of discretionary fee-shifting statutes is one who secures a judicially sanctioned change in the legal relationship of the parties."[2] *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 640 (7th Cir. 2019) (cleaned up).[3] A court should award attorney fees pursuant to a statutory fee provision if doing so will promote the objectives of the statute and the fee provision. *Callinan v. Prisoner Review Bd.*, 862 N.E.2d 1165, 1169 (Ill. App. 2007).

## III. Analysis

### A. Requirement of Bad Faith

Walmart argues that it should be awarded attorneys' fees here because an award would promote the objectives of the Publicity Act by deterring similarly time-barred claims, protecting putative defendants from incurring fees and costs in defending stale suits, and "not clogging courts with time barred claims." Def.'s Mot. for Fees at 2.

Giovannelli, on the other hand, argues that awarding fees would not promote the objectives of the Publicity Act, which he argues are to "'protect[ ] an individual's right to control and to choose whether and how to use [his] identity for commercial purposes … [or] provide[ ] remedies for the violation of an individual's right of

---

[2]It is undisputed that Walmart is the prevailing party here. *See* Def.'s Mot. for Fees at 2; *see also* Pl.'s Resp. Br. at 2.

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

publicity, compensating victims and punishing violators.'" Pl.'s Resp. Br. at 3 (quoting *Pratt v. Everalbum, Inc.*, 283 F. Supp. 3d 664, 669 (N.D. Ill. 2017)). Giovannelli also argues that the Publicity Act is analogous to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, under which the Illinois Supreme Court established a bad-faith requirement in order to trigger a fee award to prevailing *defendants*. *Id.* at 5 (citing *Krautsack v. Anderson*, 861 N.E.2d 633, 647 (Ill. 2006)). He maintains that a bad-faith requirement should also apply under the Publicity Act and that because Walmart has not alleged any bad-faith conduct on his part, the award of attorneys' fees should be denied. *Id.* at 6. Giovannelli also argues that if fees are routinely awarded to defendants, the possibility of a fee award would "undoubtedly result in plaintiffs being reluctant to file even meritorious cases." *Id.* at 5.

Giovannelli is right. Given that the Illinois Supreme Court has not addressed the Publicity Act's fee-shifting provision, the state supreme court's analysis of a similar discretionary-fee provision in the Illinois Consumer Fraud and Deceptive Business Practices Act is instructive. In *Krautsack v. Anderson*, 861 N.E. 2d 633 (Ill. 2006), the Illinois Supreme Court held that where a prevailing defendant petitions for attorneys' fees under the fee-shifting provision of the Consumer Fraud Act, the court must make a threshold finding that the plaintiff acted in bad faith before considering other circumstances relevant to its exercise of discretion. *Id.* at 647. In imposing this requirement of bad faith, the Illinois Supreme Court reasoned that because individual consumer-fraud claims often seek only small damages awards, the fee-shifting provision in the Fraud Act ensures that aggrieved consumers can exercise

4

their rights under the statute. *Id.* at 645.[4] But the state high court reasoned that the legislature's allowance of fee awards to prevailing *defendants* is motivated by a different concern—specifically, a desire to deter bad faith conduct by a plaintiff. *Id.* at 646. Recognizing that prevailing plaintiffs are more likely to recover attorneys' fees than prevailing defendants, the court concluded that this result "is a function of the remedial purpose of the Act." *Id.*

*Krautsack*'s analysis of the discretionary fee-shifting provision in the Consumer Fraud Act applies equally well to the Publicity Act. There is every reason to conclude that individual plaintiffs who bring claims under the Publicity Act are just as likely to seek relatively low monetary damages as consumer-fraud plaintiffs do. It is true that neither side presents an empirical study exhaustively canvassing the damages awards in Publicity Act cases (nor is there a reason to think that a study like that has been conducted). But the nature of the rights under the Publicity Act— generally speaking, to control the commercial use of one's identity, 765 ILCS 1075/30(a), (b)—suggests that proving *actual* damages or *actual* profits often would be quite difficult. Perhaps for professional actors or models there would be an approximate market value for actual damages or profits in a routine advertisement or merchandise setting. Otherwise, however, quantifying actual damages or profits from the unauthorized use of someone's identity is ordinarily no easy task. And even in the

---

[4]*See also id.* ("In consumer fraud cases the attorney fee awards can easily constitute the largest part of a plaintiff's recovery.") (cleaned up).

setting of a professional actor or model, proving what amount of actual profits was caused by the use of the identity—as distinct from every other factor that goes into a decision to buy a good or service—could be confounded by many variables. Not surprisingly, then, the Illinois legislature set a statutory damages award of $1,000 as a concrete, minimum alternative to an award of actual damages or profits. 765 ICLS 1075/40(a)(2). Indeed, as a comparative matter, plaintiffs pursuing run-of-the-mill Fraud Act claims are more likely to be able to prove damages than plaintiffs in Publicity Act cases. So *Krautsack*'s analysis of the viability of low-damage claims under the Fraud Act applies with the same force to Publicity Act claims: like the Fraud Act, the rationale for the Publicity Act's fee-shifting provision is to ensure that individuals whose right of publicity may have been violated are able to pursue claims under the Act.

That rationale is different from the rationale for allowing fee-shifting to prevailing defendants under the Publicity Act. It is true that Section 55 of the Act does not set forth a textually different standard for prevailing defendants and prevailing plaintiffs. But that was true too for the Consumer Fraud Act, and the Illinois Supreme Court still reasoned that discretion to award fees must be exercised differently for prevailing plaintiffs versus prevailing defendants. The state high court reasoned that a prevailing plaintiff has already proven that the defendant is *liable* under the Consumer Fraud Act—but a prevailing defendant has *not* necessarily established anything more than that the plaintiff's litigation efforts were unsuccessful. *Krautsack*, 861 N.E. 2d at 646–47. That same logic also applies to Publicity Act claims because a

6

plaintiff is, by definition, promoting the goals of the Act when he prevails—which is not necessarily the case for a prevailing defendant. It should be noted too that *Krautsack* does represent fidelity to the text of the Consumer Fraud Act, which instructs—like the Publicity Act does, 765 ICLS 1075/55—that fee awards "may" be awarded to prevailing parties. 815 ILCS 505/10a(c). *Krautsack* simply interpreted the broad term "may" in way that was consistent with the statute's purpose. Just so here: given the different goals of fee-shifting under the Publicity Act, the statute demands that prevailing defendants show bad faith of the plaintiff before recovering fees. *Pratt*, 283 F. Supp. 3d at 670. Just like for the Fraud act, this is a threshold requirement before further exercising discretion to award fees.

## B. Application to Giovannelli

Applying the requirement of bad faith to this case, the Court finds that Giovannelli did not act in bad faith in bringing his claim under the Publicity Act. Even though the Court ultimately decided against Giovannelli, he reasonably argued that his Publicity Act claim was not time barred because, in his view, the discovery rule applied and extended the statute of limitations for his claim. *See* Pl.'s Resp. Br. at 6. Thus, Giovannelli's arguments contesting the statute of limitations defense were not frivolous; rather, they were founded upon a reasonable (though losing) request that this Court apply an oft-litigated exception to the statute of limitations. *See* Pl.'s Resp. Br. at 6; *see also* MSJ Op. at 5–6. So the Court declines to find that Giovannelli's claim was brought in bad faith. Absent a finding that the Plaintiff acted in bad faith

in bringing his claims under the Publicity Act, awarding attorneys' fees to Walmart is rejected.[5]

## IV. Conclusion

Walmart's motion for attorneys' fees, R. 113, is denied.

ENTERED:


s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge


DATE: August 12, 2025

---

[5]Even absent a threshold requirement of bad faith, whether a plaintiff acted in bad faith is at the very least a factor in deciding whether to award fees to the prevailing defendant. *See Krautsack*, 861 N.E. 2d at 644 ("In determining whether a trial court abused its discretion, our appellate court has identified several factors or criteria a trial court may consider when ruling on a fee petition under section 10a(c). These factors include, but are not limited to, (1) the degree of the opposing party's culpability or bad faith.") (cleaned up). Here, given the reasonableness of the arguments presented against the limitations defense, the Court still would have found an award of attorneys' fees to Walmart unwarranted even if a consideration of the Giovannelli's bad faith were merely a factor as opposed to a threshold requirement. This conclusion highlights just how aggressive it was for Walmart to seek fees from a military veteran who is allegedly suffering from post-traumatic stress disorder arising from service to his country.